# EXHIBIT E

IN THE COURT OF COMMON PLEAS
CLARK COUNTY, OHIO

BUCKEYE RESOURCES, INC.,            :
                                    :
            Plaintiff,              :     Case No. 11-CV-0027
                                    :
      v.                            :     Judge Douglas Rastatter
                                    :
DURATECH INDUSTRIES, *et al.*,      :
                                    :
            Defendants.             :

## DEFENDANT DURATECH INDUSTRIES INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Ohio Civil Rule 56, Defendant DuraTech Industries International, Inc.

("DuraTech") respectfully moves this Court for summary judgment in its favor and against

Plaintiff Buckeye Resources, Inc. ("Buckeye Resources"), on the grounds that there are no

genuine issues of material fact, reasonable minds can come to but one conclusion, and that

conclusion entitles DuraTech to judgment as a matter of law.

The reasons in support of this motion are fully set forth in the accompanying

memorandum.

Respectfully submitted,

_____
Scott A. Campbell  (0064974)
Philip B. Sineneng  (0083406)
**THOMPSON HINE LLP**
41 South High Street, Suite 1700
Columbus, Ohio 43215-6101
Phone: (614) 469-3200; Fax: (614) 469-3361
Scott.Campbell@ThompsonHine.com
Philip.Sineneng@ThompsonHine.com

*Attorneys for Defendant DuraTech Industries*
*International, Inc.*

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

This motion is based entirely on the Plaintiff's pleading and the testimony of its Civil

Rule 30(B)(5) representative and its sole expert.

Although Buckeye Resources successfully and profitably used a tub grinder

manufactured by DuraTech to process mulch for nearly five years, it has concocted this lawsuit

against DuraTech arising from two breakdowns during the life of the machine.  Despite

voluntarily dismissing its Complaint on October 8, 2010, just three weeks before trial and while

DuraTech's prior motion for summary judgment was still pending, Buckeye Resources now

reasserts identical claims for product liability, breach of express and implied warranties, and

negligence, even though they have no factual or legal basis.  DuraTech is entitled to summary

judgment, as a matter of law, because the following undisputed facts, among others—all taken

from the depositions of Plaintiff or its expert—are fatal to Buckeye Resources' claims:

- there were no physical injuries or property damage as a result of either of the two incidents described in the Complaint (Deposition of Buckeye Resources' Rule 30(B)(5) Corporate Representative, Richard Posey ("30(B)(5) Dep."), at 115:21-117:13);[1]

- the grinder was suitable for, and indeed successful in, processing organic material into mulch (*id.* at 88:17-91:19);

- Buckeye Resources acknowledged receipt of DuraTech's written disclaimer of all implied warranties (*id.* at 67:23-68:4, Ex. 6);

- DuraTech's express warranty expired on August 6, 2006, one year after Buckeye Resources purchased the grinder, and long before any of the two alleged incidents (*id.* at 59:18-21; 78:11-17; Ex. 6);

- DuraTech did not sell the grinder to Buckeye Resources (*id.* at 88:12-16);

---

[1] All deposition transcripts referenced herein are on file with the Court under Case No. 09-CV-0395.

- Buckeye Resources attempts to allege a design flaw in DuraTech's manufacture of the grinder, but no such claim exists in the absence of any physical injury or damage to other property (*see Mullins v. Clark Equip. Co.* (2d Dist. Oct. 26, 1994), No. 14426, 1994 WL 587581, at *1-2; *Kinstle v. J&M Mfg. Co.* (3d Dist. Aug. 26, 1977), No. 8-76-6, 1977 WL 199565, at *3);

- Buckeye Resources, by its own admission, has no evidence of what caused the first incident (*id.* at 126:18-23; Deposition of Jeffrey C. Bookwalter ("Bookwalter Dep.") at 63:22-64:3; 64:14-65:19);

- Buckeye Resources' only alleged damages are for purely economic loss, even though economic loss is not recoverable on theories of product liability (*Westfield Ins. Co. v. HULS Am., Inc.* (10th Dist. 1998), 128 Ohio App. 3d 270, 282) or negligence (*Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.* (2005), 106 Ohio St. 3d 412, 2005-Ohio-5409 at ¶ 16); and

- Buckeye Resources suffered no economic loss (or physical injury) as a result of the first incident (30(B)(5) Dep. at 127:5-18).

Machines break down and need repair in the ordinary course of business. Such repairs are a risk one assumes when buying and operating heavy equipment. This lawsuit is, at its base, an attempt to shift the losses associated with those ordinary and expected risks onto DuraTech, and should be rejected.

## II. STATEMENT OF UNDISPUTED FACTS

### A. Buckeye Resources' Purchase of the Model 3010 Tub Grinder

DuraTech is a leading global manufacturer of heavy-duty agricultural equipment headquartered in Jamestown, North Dakota. DuraTech's product line includes a full range of industrial tub and horizontal tub grinders with a multitude of custom options for its customer's operations. Among its grinders is the Model 3010 Tub Grinder, a 38-foot-long, 11-foot-tall grinder weighing over 35,000 pounds, which is capable of breaking down wood waste, grass clippings, leaves, pallets, tree branches, tree trunks, vegetation, and other organic materials into mulch. A photo of a 3010 Tub Grinder taken from a DuraTech brochure (*see* Bookwalter Dep. at Ex. 5) appears below:



Buckeye Resources specializes in processing and selling mulch, soils and other plant material to businesses and customers in the horticultural industry. In August 2005, Buckeye Resources purchased a DuraTech Model 3010 Tub Grinder (the "Grinder") from Defendant Baker & Sons Equipment Co. ("Baker & Sons"), an authorized DuraTech dealer in Lewisville, Ohio. 30(B)(5) Dep. at 59:18-21.[2]

Buckeye Resources purchased the Grinder to process mulch for its bulk and bagged product. *Id.* at 88:17-19. The Grinder served that purpose from 2005 until 2010, when it became collateral damage in a fire at Buckeye Resources which destroyed one building and several other machines. *Id.* at 165:8-12. Buckeye Resources initiated this lawsuit against DuraTech and Baker & Sons arising from two incidents where the Grinder allegedly "failed," resulting in a

---

[2] It already owned a previous model DuraTech grinder which it also purchased from Baker & Sons. *Id.* at 63:16-19.

"business interruption" while it was repaired. *See* Buckeye Resources Refiled Complaint, dated January 7, 2011 ("Complaint") at ¶¶ 13-14.

**B.      The Alleged January 23, 2007 Incident**

The first of these alleged failures occurred on January 23, 2007 ("the 2007 Incident"). Buckeye Resources claims that the Grinder's "bearings failed." 30(B)(5) Dep. at 123:20-23. As a result of this "failure," Buckeye Resources arranged to have the affected parts transported to DuraTech's North Dakota headquarters, where DuraTech installed new bearings. *Id.* at 123:22-124:6. Other than the travel expenses associated with hauling the equipment from Ohio to North Dakota, there is no other documentation of the incident.

> Q:      The January 2007 incident, was there any documentation of that incident other than I guess the expenses of driving it to North Dakota?
>
> A:      No, there was no documentation.
>
> Q:      Any photographs taken at the time?
>
> A:      No, sir.

*Id.* at 123:14-19. Importantly, Buckeye Resources has no information about the cause of the 2007 Incident (*id.* at 126:18-23), and its expert witness, Jeffrey C. Bookwalter, P.E. of SEA, Ltd., admits that he cannot render any opinions about the cause of the 2007 Incident:

> Q:      Do any of the opinions that you've reached here apply to the first failure?  Or are you unable to reach any opinions about the first failure?
>
> A:      I really can't reach any opinions with the first failure.  I really never saw any of the physical evidence associated with it.
>
> . . .
>
> Q:      But you couldn't tell if it was—without seeing it you couldn't tell whether it was because a vandal broke in and damaged it or a hand grenade went off underneath it or what.

5

A:      All those myriads of possibilities.  Yeah, really I never saw the physical evidence.
. . . [I]n terms of any other information, I had no real knowledge of what that
bearing looked like, if you will, after failure.

Q:      Did you have any discussions with anyone at Buckeye Resources about the first
failure?

A:      Other than that it occurred and it was on the same bearing, no.  <u>There was no
physical evidence for them.  To me it was fruitless at that point[.]</u>

        . . .

Q:      Without the physical evidence you're saying it was fruitless to even consider.

A:      Speculate until the crows come home but it's not going to do us any good.

Bookwalter Dep. at 63:22-64:3; 64:14-65:19 (emphasis added).

The 2007 Incident resulted in <u>no physical injuries or property damage</u>.  30(B)(5) Dep. at

115:21-117:13.  Additionally, Buckeye Resources admitted that it suffered <u>no lost sales either</u>, as

a result of the 2007 Incident.  *Id.* at 127:5-18.

**C.      The Alleged December 2, 2008 Incident**

After the alleged January 2007 Incident, the Grinder was put back to use and ran

smoothly for nearly two years before the next alleged failure occurred on December 2, 2008 (the

"2008 Incident," and together with the 2007 Incident, the "Two Incidents").  *See* Complaint at ¶

6.  According to Buckeye Resources, the replacements for the bearings that failed during the

2007 Incident failed in December 2008.  30(B)(5) Dep. at 130:5-10.  Unlike the 2007 Incident,

the 2008 bearing failure allegedly caused the rotor shaft to bend, which required the entire shaft

to be replaced.  *Id.* at 131:6-17.[3]  The bent shaft, and the faulty bearings, were sent to SEA, Ltd.

for its examination.  *Id.* at 130:21-131:5.

---

[3] Mr. Bookwalter explained that when a bearing is destroyed, it can no longer support the weight
of the rotor shaft and can no longer keep the rotor shaft in place, causing it to bend.  Bookwalter
Dep. at 76:15-78:2.

6

Buckeye Resources itself has no evidence or opinions on what caused either of the Two Incidents. *Id.* at 111:7-14; 126:18-23. Instead, it relies entirely on Mr. Bookwalter's opinions. *Id.* at 111:13-22. For his part, Mr. Bookwalter's opinion is that the 2008 Incident was the result of the bearing seal used in the Grinder being rated too low for the Grinder's maximum rotor speed, causing the seal to wear faster than it might otherwise have worn, had the motor been operated at a different speed. *See* Bookwalter Dep. at 115:20-116:2; *see also id.* at Ex. 2, at p. 3. He did not opine that that was a design flaw in the Grinder, nor did he find any error in the manufacture or repair of the machine or its parts:

Q:     Generally speaking, <u>it's not a design defect</u> in your opinion to have a seal that wears out.

A:     <u>No, I don't think so. I mean seals ultimately will wear. I mean it's just the nature of the beast.</u>

Q:     And it's likewise not a manufacturing defect to have a seal that wears out.

A:     Depending. It can be a manufacturing defect to have it prematurely wear. <u>But I have no evidence that occurred in this case.</u>

    . . .

Q:     [Y]ou're not suggesting that when that shaft was prepared and shipped it was—there was any failure in the preparation or repair or manufacture of that particular piece of machine, you're just saying that the misalignment of the seal versus the rotor speed is—the seal speed versus the rotor speed is the problem right?

A:     <u>I would have no evidence of that.</u> My notes indicate that that rotor was factory balanced in February of '07. It did run for—if it would have been, I would have expected an almost immediate failure if it had not been proper as it came from the factory in that state.

Q:     Right.

A:     <u>So there's no evidence to me there was anything wrong with that particular rotor assembly at the time it was supplied in 2007</u> [as part of the 2007 repair].

*Id.* at 118:7-120:3 (emphasis added). In short, his opinion is that the failures were the consequence of worn seals. But he never ties that to any negligence in design, manufacture, or repair.

Like the 2007 Incident, the 2008 Incident resulted in <u>no physical injuries or property damage</u>. 30(B)(5) Dep. at 130:17-19. After the 2008 Incident, the Grinder was put back to use and successfully processed mulch for another 19 months, until it was destroyed in the June 2010 fire. *Id.* at 166:2-6. There were no further incidents or bearing failures, even though the Grinder was operated at the same speed, and in the same manner, as prior to the 2008 Incident.

**D.      Buckeye Resources' 2009 Complaint Against DuraTech**

Three months after the Grinder was put back in service after the 2008 Incident, Buckeye Resources sued DuraTech and Baker & Sons, asserting causes of action based on product liability, breach of express and implied warranties, and negligence. *See* Complaint in *Buckeye Resources Inc v. DuraTech Industries, et al.*, Case No. 09-CV-0395, dated March 20, 2009 (the "2009 Complaint") at ¶¶ 7-11. Buckeye Resources claims monetary damages solely for its economic loss arising from repair costs and lost sales. *Id.* at ¶¶ 12-13. Baker & Sons counterclaimed against Buckeye Resources for an unpaid account. *See* Baker & Sons Answer to the 2009 Complaint and Counterclaim, dated April 30, 2009.

**E.      The Destruction of the Grinder**

On June 27, 2010, a fire swept through the building where the Grinder was stored. Both the building and the Grinder were completely destroyed beyond repair. 30(B)(5) Dep. at 25:1-7. As Buckeye Resources began its cleanup of the site, the remnants of the Grinder were sent to a scrap yard. *Id.* at 165:8-24.

**F.** **Buckeye Resources' Voluntary Dismissal of Its 2009 Complaint Just Weeks Before Trial**

After this Court granted DuraTech's motion to compel on January 22, 2010, and ordered

Buckeye Resources to respond to DuraTech's discovery requests, the parties proceeded with

discovery in anticipation of the November 1, 2010 trial date. *See, e.g.,* Deposition Transcript of

Buckeye Resources, dated August 6, 2010, and Deposition Transcript of Jeffrey C. Bookwalter,

dated August 30, 2010 (both on file with the Court in *Buckeye Resources Inc v. DuraTech

Industries, et al.*, Case No. 09-CV-0395 ("the 2009 Action")). DuraTech deposed Buckeye

Resources' Rule 30(B)(5) representative, Richard A. Posey, and its expert witness, Jeffrey C.

Bookwalter. *Id.* Upon completing discovery, DuraTech filed a Motion to Exclude Buckeye

Resources' expert witness on the grounds that Buckeye Resources improperly withheld

production of its expert report, and a Motion for Summary Judgment for failure to state a claim.

*See* DuraTech's Motion for Terminating Sanctions or, in the alternative, for Exclusion of

Plaintiff's Expert Witness, dated September 23, 2010, and DuraTech's Motion for Summary

Judgment, dated September 27, 2010 (both on file with the Court in the 2009 Action). Both

motions were still pending before this Court when Buckeye Resources voluntarily dismissed its

Complaint on October 8, 2010, just three weeks before the scheduled trial. *See* Plaintiff's Notice

of Voluntary Dismissal without Prejudice, dated October 8, 2010 (on file with the Court in the

2009 Action).

**G.** **Buckeye Resources' Refiled Complaint**

On January 7, 2011, Buckeye Resources refiled its Complaint, alleging in nearly identical

language the exact same causes of action which it had alleged in its 2009 Complaint. *See

generally* Complaint. Buckeye Resources alleged no intervening events, or new factual

discoveries, since the time of its voluntary dismissal in October 2010, that renders its refiled

Complaint any more meritorious than its 2009 Complaint. Because summary judgment in favor of DuraTech was appropriate then, it is certainly appropriate again now.

## III.    LAW AND ARGUMENT

### A.    DuraTech is Entitled to Summary Judgment.

Pursuant to Civ. R. 56(C), summary judgment is warranted when:

> (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Welco Industries, Inc. v. Applied Co.* (1993), 67 Ohio St.3d 344, 346. Because the pleadings and testimony show that there is no genuine issue of material fact for trial, and that reasonable minds can come to but one conclusion in favor of DuraTech, DuraTech is entitled to summary judgment on all claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293.

### B.    Buckeye Resources' First Cause of Action Fails Because It Has Not Alleged Any Personal Injury Or Property Damage, Barring Recovery Under A Theory Of Product Liability.

Buckeye Resources' first cause of action alleges liability under Ohio's product liability statute, codified at R.C. 2307.75. *See* Complaint at ¶¶ 7-8. However, the damages it claims as a result of the Two Incidents are for purely economic loss. *Id.* at ¶¶ 13-14. The economic loss alleged by Buckeye Resources is not recoverable under a theory of product liability. *Westfield Ins. Co. v. HULS Am., Inc.* (10th Dist. 1998), 128 Ohio App.3d 270, 282 (finding that claims for lost business profits were not compensable under product liability statute).

More importantly, the product liability claim fails as a matter of law because there was no harm to any person or property other than the allegedly defective product. "'Product liability claim' means a claim or cause of action that is asserted in a civil action pursuant to section 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a

manufacturer or supplier for death, <u>physical injury to person</u>, emotional distress, or <u>physical damage to property other than the product in question</u> . . . ." R.C. 2307.71(A)(13) (emphasis added). Therefore, in the absence of any physical injury to a person, or any damage to property other than the supposedly defective product, a plaintiff cannot maintain a product liability claim.

Buckeye Resources has testified, and its counsel even confirmed, that no one was injured as a result of either of the Two Incidents, nor was there any damage to any property other than the Grinder itself.

> Q:   In the January 2007 incident no human was injured, correct?
>
> A:   That's correct.
>
> Q:   In the December 2008 incident no human being was injured.
>
> A:   That is correct, sir.
>
> Q:   And was there damage to other property besides—well, there was an issue in both the 2007 and 2008 incidents whereby the grinder didn't work.
>
> A:   We had a failure in the bearing housing of no bearing, yes.
>
> Q:   It was not operational.
>
> A:   Yes, sir.
>
> Q:   Not a trick question, just the grinder wasn't working.
>
> A:   Working, right.
>
> Q:   On those two occasions that we're talking about in this lawsuit where these two shafts allegedly failed, was there any damage or harm to any other machine at your—
>
> A:   Not that I'm aware of. I don't believe there was, sir.
>
>     . . .
>
> MR. WILDMAN:     Or I would have made claims for all those.

30(B)(5) Dep. at 115:21-117:13. Buckeye Resources' counsel further emphasized the point when he interjected during Mr. Bookwalter's deposition that Buckeye Resources was not alleging any damage to any other property:

> Q:  At the time of [the Grinder's] failure you were not made aware of any damage to any other equipment of Buckeye Resources at the time of the failure.
>
> A:  No, I was not.
>
> MR. WILDMAN:  <u>Nor are we making any claim for it.</u>

Bookwalter Dep. at 130:22-131:3 (emphasis added). Having conclusively established that there are no allegations of physical injury to person, or physical damage to other property, DuraTech is entitled to summary judgment on Buckeye Resources' product liability claim.

**C.  Buckeye Resources' Second Cause of Action Fails Because It Cannot Establish Breach Of Any Express Or Implied Warranties.**

> 1.  <u>DuraTech's Express Warranties Did Not Cover The Grinder At The Time Of The Two Incidents.</u>

Though Buckeye Resources alleges breach of express warranties (*see* Complaint at ¶¶ 9-11), it has not specified anywhere which warranty DuraTech allegedly breached. In fact, the warranty issued by DuraTech which covered the Grinder expired long before either of the Two Incidents. DuraTech's warranty explicitly states:

> DuraTech Industries International Inc. (DuraTech Industries) warrants to its authorized dealer, who in turn warrants to the original purchaser for twelve (12) months from Retail Sale Date that this product will be free from defects in material and workmanship when used as intended and under normal maintenance and operating conditions.

*See* 30(B)(5) Dep. at Ex. 6 (authenticated by Buckeye Resources at *id.* at 67:23-68:4). The Grinder was purchased and delivered to Buckeye Resources in August 2005. *Id.* at 59:18-21; 78:11-17. Any express warranties, therefore, expired in August 2006, five months before the first alleged Grinder failure.

2.    <u>Buckeye Resources Admits That The Grinder Satisfied The Implied Warranties Of Fitness And Merchantability.</u>

    *a.*    *DuraTech's Express Warranty Disclaimed All Implied Warranties.*

Buckeye Resources' claims for breach of the implied warranties of fitness and merchantability (*see* Complaint at ¶¶ 10-11) fail as a matter of law. For one, the express warranty included an explicit disclaimer of all implied warranties, which are enforceable in Ohio. *Keel v. Toledo Harley-Davidson/Buell* (6th Dist. 2009), 184 Ohio App. 3d 348, 2009-Ohio-5190 at ¶ 9. *See also* R.C. 1302.29 ("Language to exclude all warranties of fitness is sufficient if it states for example, that 'there are no warranties which extend beyond the description on the face hereof.'"). The disclaimer of all implied warranties in this case could not be more clear:

> All other warranties made with respect to this product, either expressed or implied, are hereby disclaimed by DuraTech Industries International Inc.

*Id.* at Ex. 6. All claims based on any implied warranties therefore fail as a matter of law.

    *b.*    *Even If the Disclaimer of Implied Warranties Is Ignored, As a Matter of Law, No Implied Warranty Exists Between The Buyer, Buckeye Resources, and the Manufacturer, DuraTech.*

Even if the disclaimer were absent in this case, Buckeye Resources' claims for breach of the implied warranties of fitness and of merchantability nonetheless fail as a matter of law for several independent reasons. First, those warranties exist between the buyer and the seller, not between the buyer and the manufacturer. *See* R.C. 1302.27 ("[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the <u>seller</u> is a merchant with respect to goods of that kind.") (emphasis added); R.C. 1302.28 ("Where the <u>seller</u> at the time of contracting has reason to know any particular purpose for which the goods are required and that the <u>buyer</u> is relying on the <u>seller's</u> skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose.") (emphasis added). Buckeye

Resources purchased the Grinder from Baker & Sons, not DuraTech.  30(B)(5) Dep. at 88:12-16 ("Q:  So in connection with my client DuraTech, there was never a contact at all[?]  A:  To the best of my knowledge, no one from DuraTech was involved in the transaction to buy the 3010 tub grinder.") (emphasis added).  Even if Baker & Sons is an authorized dealer of DuraTech products, there is no implied warranty that flows from DuraTech to Buckeye Resources.  *See Acme Steak Co. v. Great Lakes Mech. Co.* (7th Dist. 2000), Nos. 98 C.A. 146, 98 C.A. 243, 2000-Ohio-2566, at ¶ 117 (granting summary judgment for manufacturer because there was no allegation of privity of contract between buyer and manufacturer).

> c.  *Even if the Disclaimer of Implied Warranties and the Absence of Privity Are Ignored, the Grinder Was Fit For Processing Mulch And So Was Fit For A Particular Purpose.*

Second, according to the Rule 30(B)(5) testimony of Buckeye Resources, there has been no breach of either warranty.  The implied warranty of fitness provides that a product is fit for a particular purpose represented by the seller and relied upon by the buyer.  *See Monarch Steel Co. v. Communication Solutions, Inc.* (8th Dist. March 20, 1997), No. 70509, 1997 WL 127180, at *2 ("[T]he seller must have reason to know of the buyer's particular purpose, the seller must have reason to know that the buyer is relying on the seller's skill or judgment to select the appropriate goods and the buyer must in fact rely upon the seller's skill or judgment.").  Here, as established above, DuraTech was not the seller.  Furthermore, as established by the testimony below, the machine did exactly what it was supposed to do.

> d.  *Even if the Disclaimer of Implied Warranties and the Absence of Privity Are Ignored, the Grinder Effectively Processed Mulch And So It Was Merchandisable.*

The implied warranty of merchantability, meanwhile, provides that a product is fit for the ordinary purpose for which that product is used.  *See Lipnick v. Reisinger* (8th Dist. 2006), 168

Ohio App. 3d 253, 2006-Ohio-3878, at ¶ 11 ("To be merchantable, the goods must be fit for the ordinary purpose for which they are designed."). The Grinder was ordinarily used for grinding vegetation into mulch, and according to Buckeye Resources, did just that:

> Q: And Buckeye Resources needed this tub grinder to process mulch.
>
> A: That is correct, sir.
>
> . . .
>
> Q: And the grinder was able to process mulch.
>
> A: Yes, sir.
>
> Q: Or the organic matter that becomes mulch.
>
> A: Yes, sir.
>
> Q: And it was used for that purpose from when it was purchased in the summer of '05 until the fire six weeks ago.
>
> A: That is correct sir.
>
> Q: And it was used—it was put back into the same service that it had been used for after each of the two incidents at issue in this case . . .
>
> A: Yes, sir.
>
> Q: And it was used until it was destroyed in the fire for the same purpose after the lawsuit was filed as it was being used for before the lawsuit was filed.
>
> A: Yes, sir.
>
> Q: And it was capable of doing its job and in fact did its job except for the two incidents; that is once that part was replaced it was again capable of doing its job.
>
> A: Yes, sir.

30(B)(5) Dep. at 88:17-91:19. Thus, it is undisputed that Buckeye Resources purchased the Grinder for the particular purpose of processing mulch, and successfully did so, using the Grinder, for nearly five years. It would still be using the Grinder to process mulch today but for

the June 2010 fire which destroyed the machine. Because the Grinder was continuously used to

process mulch, and there is no allegation that it was unable to do so, Buckeye Resources' claims

for breach of the implied warranties of fitness and merchantability fail as a matter of law.

> **D.** **Buckeye Resources' Third Cause of Action Fails Because It Does Not State A Claim For Negligence.**

>> 1.    Ohio Does Not Recognize The Purported Duty Suggested Here.

Buckeye Resources' "negligence" claim is really that the Grinder's bearing seals should

have been better aligned with the Grinder's operating speed:

> A:    I don't have a quarrel with the bearings selected, okay? The seal isn't going to work given the operating speed capability of the hammer mill. There's the crux of my criticism.

> Q:    Understood. Is that based on the size of the seal or is that based on the speed rating of the seal?

> A:    The speed rating of the seal.

> Q:    . . . At the end of the first full paragraph on page 4 [of your report] you say " . . . it is SEA's opinion that the main rotor bearing system design on the DuraTech 3010 Tub Grinder is inadequate for its intended purpose."

>    The rotor bearing system achieves its intended purpose of processing vegetation into mulch, correct?

> A:    The machine will do that. And the rotor bearing system is a part of that. However, given the operational parameters possible, that's not adequate for its intended purpose and that it be operated at speeds higher than the seal rating.

> Q:    And that is—and I understand you've been extremely clear about that being a criticism and that being your opinion.

>    What I'm really trying to do is make sure I've narrowed it to say that that's the only—to make sure you to be saying that's the only inadequacy that you're identifying.

> A:    Yes, I would agree with that.

Bookwalter Dep. at 125:16-126:20 (emphasis added). Mr. Bookwalter's conclusion is that if the

seal's speed rating had been better aligned with the machine's rotor speed, the seals would have

worn out eventually, but at a later time. *Id.* at 115:20-116:2. First, Ohio law does not recognize

any duty in tort to design a product so that it wears slower. Such a duty may arise in contract—

by warranty or otherwise—but there is no such duty in negligence.

2. <u>Ohio Does Not Recognize A Cause of Action for Negligent Design In the Absence of Any Personal Injury.</u>

Second, even if DuraTech owed a duty in tort to Buckeye Resources to use slower-

wearing seals for the Grinder, Buckeye Resources' negligent design claim still fails as a matter

of law. Under Ohio law, Buckeye Resources must establish that the Grinder "is more dangerous

than an ordinary consumer would expect when used in an intended or reasonably foreseeable

manner or if the benefits of the challenged design do not outweigh the risk inherent in such

design." *Aldridge v. Reckart Equip Co.* (4th Dist. 2006), No. 04-CA-17, 2006-Ohio-4964 at

¶ 75. Thus, negligent design begins with the premise that the user of the allegedly defectively

designed product was physically injured. *See, e.g., Mullins v. Clark Equip. Co.* (2d Dist. Oct. 26,

1994), No. 14426, 1994 WL 587581, at \*1-2; *Kinstle v. J&M Mfg. Co.* (3d Dist. Aug. 26, 1977),

No. 8-76-6, 1977 WL 199565, at \*3. Here, the alleged "defect"—DuraTech's use of a seal rated

for a different operating speed—did not create a more "dangerous" situation for any of the

Grinder's operators. Furthermore, and more importantly, no one was ever injured, nor was any

property damaged, as a result of either of the Two Incidents. 30(B)(5) Dep. at 115:21-117:13;

Bookwalter Dep. at 130:22-131:3. Given that there were no injuries, Buckeye Resources' claim

for negligence is fails as a matter of law. Indeed, because the only alleged injury to Buckeye

Resources was financial loss, it may not recover from DuraTech under a negligence theory. *See*

*Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St. 3d 40, 45 ("In

negligence, the law imposes upon the manufacturer of a product a duty of reasonable care. That

duty protects the consumer from <u>physical injury</u>, whether to person or property. However, the

law of negligence does not extend the manufacturer's duty so far as to protect the consumer's economic expectations[.]") (emphasis added); *see also Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, (2005) 106 Ohio St. 3d. 412, 2005-Ohio-5409 at ¶ 6 ("The well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.") (citations omitted). Buckeye Resources' claim for negligence fails as a matter of law.

   3. <u>Any Claim For Negligent Repair or Manufacture Fails As A Matter of Law</u>.

  Nor does Buckeye Resources have any claim for negligent repair or manufacture. To make a claim for negligence, Buckeye Resources must show that DuraTech undertook a duty with respect to Buckeye Resources, and that DuraTech's failure of comply with that duty was the proximate cause of Buckeye Resources' physical injury. *Williams v. Central Psychiatric Clinic* (10th Dist. Nov. 15, 1994), No. 94APIO2-228, 1994 WL 649899, at *3 (stating the criteria for negligent repair); *White v. DePuy, Inc.* (12th Dist. 1998), 129 Ohio App. 3d 472, 485 (stating the criteria for negligent manufacture). Buckeye Resources can point to no evidence to support those claims.

  First, as Buckeye Resources made abundantly clear, there were no physical injuries or other property damage as a result of either of the two incidents alleged in the Complaint. 30(B)(5) Dep. at 115:21-117:13. Second, its expert had no issue with the quality of DuraTech's repairs or manufacture of the grinder:

  Q: Okay. And you're not suggesting that when that shaft was prepared and shipped it was—there was any failure in the preparation or <u>repair or manufacture</u> of that particular piece of machine, you're just saying that the misalignment of the seal versus the rotor speed is—the seal speed versus the rotor speed is the problem, right?

18

A:    I would have no evidence of that. My notes indicate that that rotor was factory balanced in February of '07. It did run for—<u>if it would have been, I would have expected an almost immediate failure if it had not been proper as it came from the factory in that state.</u>

Bookwalter Dep. 119:11-23 (emphasis added). Indeed, the grinder did not experience any issues for nearly a year and a half after it was purchased. Further, it was put back into use immediately upon repair after the first incident without any failures for nearly two years, and did not experience any further incidents after the second repair. *See* 30(B)(5) Dep. at 166:2-6; Complaint at ¶ 6. Thus, Buckeye Resources cannot maintain a claim for negligent repair or manufacture.

E.    **Even if Any Claim Survives, Buckeye Resources Has No Claim For Damages From The January 2007 Incident.**

During its sworn deposition, Buckeye Resources disavowed any lost sales arising from the 2007 Incident:

Q:    What customers if any were affected by [the 2007 Incident]?

A:    Essentially in '07, because the downtime was not as great, it was really minimalized, so.

Q:    You were able to fill all the orders that you had.

A:    Right.

      . . .

Q:    Just so I'm clear, Buckeye Resources isn't claiming any lost sales as a result of the '07 incident.

A:    I believe that's correct.

30(B)(5) Dep. at 127:5-18. Buckeye Resources has conceded that it did not endure any physical injury or suffer any lost sales as a result of the 2007 Incident. Because Buckeye Resources has suffered no damages from the 2007 Incident, DuraTech is entitled to summary judgment as a

matter of law on all claims arising therefrom even if summary judgment is not entered on any of the other bases discussed above.

## IV.  CONCLUSION

For the reasons stated above, the Court should enter summary judgment in DuraTech's favor on all counts and causes of action found in the Complaint.

Respectfully submitted,

_____
Scott A. Campbell  (0064974)
Philip B. Sineneng  (0083406)
**THOMPSON HINE LLP**
41 South High Street, Suite 1700
Columbus, Ohio 43215-6101
Phone: (614) 469-3200
Fax: (614) 469-3361
Scott.Campbell@ThompsonHine.com
Philip.Sineneng@ThompsonHine.com

*Attorneys for Defendant DuraTech Industries
International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Defendant DuraTech Industries International, Inc.'s Motion for Summary Judgment* was served upon the following counsel, via regular U.S. Mail, postage prepaid, this 14th day of February 2011:

> Austin P. Wildman, Esq.
> WILDMAN & ASSOCIATES, LLC
> 26 East Fourth Street
> London, Ohio 43140
>
> *Attorney for Plaintiff*
>
> Christopher F. Johnson, Esq.
> FREUND, FREEZE & ARNOLD
> One Dayton Centre
> 1 South Main Street, Suite 1800
> Dayton, OH 45402-2017
>
> Thomas A. Hampton, Esq.
> 160 East Main Street
> P.O. Box 310
> Barnesville, OH 43713
>
> *Attorneys for Defendant Baker and Sons Equipment Company*

Philip B. Sineneng (0083406)

655572.2